IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CARL ANTHONY MONTANARO and ) | Case No. 08-60665 |
| ANNETTE nmn MONTANARO, ) | |
| ) | |
| Debtors. ) | |

## ORDER SUSTAINING, IN PART, AND OVERRULING, IN PART, TRUSTEE'S OBJECTION TO DEBTORS' AMENDED CLAIM OF EXEMPTIONS

The Chapter 7 Trustee objects to the Debtors' claimed exemptions in Roth IRAs which the Debtors purchased within two months prior to filing their bankruptcy case. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons that follow, the Trustee's Objection to Debtors' Amended Claim of Exemptions will be SUSTAINED, IN PART, AND OVERRULED, IN PART.

The Debtors filed a voluntary Chapter 7 bankruptcy petition on April 21, 2008. As of February 2008, Debtor Carl Montanaro owned several mutual funds. A few weeks before filing the bankruptcy petition, on the advice of his financial planner at LPL Financial Services, he cashed out the mutual funds, totaling approximately $9,000, and invested them into Roth IRAs for himself and his wife, Debtor Annette Montanaro. Initially, he intended to use all of the mutual fund money to fund an IRA for himself, but that would have put him over the annual limit for Roth IRAs. As a

result, on March 4, 2008, he invested $5,500 into a Roth IRA for himself[1] and, on March 5, 2008, he invested $3,500 in a Roth IRA for Annette.

The Debtors did not list either of these IRAs on their initial bankruptcy schedules filed on April 21. However, they brought the paperwork relating to the IRAs to their initial § 341 Meeting of Creditors and produced those papers to the Trustee. The Trustee then filed a motion to compel turnover of, *inter alia*, the IRAs as unscheduled assets pursuant to § 521(a)(4). On July 28, 2008, the Trustee filed a notice of intent to transfer Annette's equity interest as to her IRA. After the Court approved the equity transfer, the Debtors then paid the Trustee $3,500 for that equity interest. Subsequently, the Debtors filed amended Schedules B and C, listing the two IRAs and claiming them both exempt under § 513.430.1(10)(f) of the Missouri Statutes. The Trustee objects to the claimed exemptions on the ground that the Debtors had committed fraud by using nonexempt assets to purchase exempt IRAs shortly before filing bankruptcy. The Debtors do not seek the return of the equity transfer for Annette's IRA from the Trustee.

Because the State of Missouri has opted out of the federal exemption scheme,[2] Missouri exemption laws apply. Section 513.430.1(10)(f) of the Missouri Statutes

---

[1] The $5,500 represents $4,500 for his 2008 contribution, and a $1,000 retroactive contribution for 2007.

[2] 11 U.S.C. § 522(b)(1); Mo. Rev. Stat. § 513.427.

2

provides, in relevant part, that a debtor is permitted to claim an exemption in such person's right to receive:

> (f) Any money or assets, payable to a participant or beneficiary from, of any interest of any participant or beneficiary in, a retirement plan or profit-sharing plan that is qualified under Section 401(a), 403(a), 403(b), 408, 408A or 409 of the Internal Revenue Code of 1986, as amended, or except as provided in this paragraph. . . .
>
> If proceedings under Title 11 of the United States Code are commenced by or against such person, no amount of funds shall be exempt in such proceedings under any such plan, contract, or trust which is fraudulent as defined in section 456.630, RSMo, and for the period such person participated within three years prior to the commencement of such proceedings. For the purposes of this section, when the fraudulently conveyed funds are recovered and after, such funds shall be deducted and then treated as though the funds had never been contributed to the plan, contract, or trust.[3]

In other words, in a bankruptcy case, a Missouri debtor is not entitled to claim an exemption in funds deposited into an otherwise exempt retirement account if the debtor's deposit of such funds into the account was made within three years prior to the filing of the case and was "fraudulent."

The Eighth Circuit recently interpreted the term "fraudulent" in the context of exemption planning in *In re Addison*.[4] In that case, the debtor used nonexempt assets to purchase $4,000 Roth IRAs for himself and his wife in the months before filing

---

[3] Mo. Rev. Stat. § 513.430.1(10)(f).

[4] 540 F.3d 805 (8th Cir. 2008). *See also In re Wilmoth*, No. 08-6022 (B.A.P. 8th Cir. Dec. 9, 2008) (applying *Addison* in exemption planning case).

bankruptcy and, on the very day he filed his bankruptcy petition, he used nonexempt assets to pay down the principal on his home mortgage by $11,500. He then attempted to claim exemptions in the homestead's equity and his Roth IRA under Minnesota's exemption laws. The trustee objected, asserting that Minnesota's Uniform Fraudulent Transfers Act (UFTA) and Bankruptcy Code § 522(o) prohibited the exemptions as being fraudulent. Specifically, the UFTA prohibits debtors from claiming exemptions in assets if they were obtained by transfers made "with actual intent to hinder, delay, or defraud any creditor."[5] Similarly, § 522(o) provides that the amount of a state homestead exemption is to be reduced to the extent that the value of the exemption is attributable to nonexempt property that the debtor converted into the homestead within ten years of filing for bankruptcy, if the conversion was made "with the intent to hinder, delay, or defraud a creditor."[6]

In deciding that the bankruptcy court clearly erred in finding that Addison had the requisite intent to hinder, delay, or defraud his creditors, the Eighth Circuit made clear that, in order to deny a debtor an exemption in a homestead due to pre-bankruptcy exemption planning, there must generally be "extrinsic evidence" of intent

---

[5] *Id.* at 810 (quoting Minn. Stat. Ann. § 513.44(a)).

[6] *Id*. (quoting 11 U.S.C. § 522(o)). *See also Graven v. Fink (In re Graven)*, 936 F.2d 378, 383 (8th Cir. 1991) (comparing § 548(a)'s "actual intent to hinder, delay, or defraud" language with "intent to hinder, delay, or defraud" in Missouri's then-applicable state fraudulent conveyance statute, noting that the two statutes use the "same standard").

4

to defraud *other than* the conversion of non-exempt assets to exempt assets, even if the debtor expressly admits that the purpose of doing so was to place assets beyond the reach of creditors.[7] The Eighth Circuit enunciated four indicia of such extrinsic evidence of fraud, including (1) conduct intentionally designed to materially mislead or deceive creditors about the conversion of assets; (2) use of credit to buy exempt property; (3) converting a "very great amount" of nonexempt property to exempt property; and (4) conveyances by the debtor for less than adequate consideration.[8] And, in *Addison*, the Eighth Circuit applied this analysis not only to the debtor's homestead exemption, but also to his Roth IRA.[9]

In the case at bar, as mentioned above, the Debtors do not seek the return of the equity transfer as to Annette's IRA, so her claimed exemption is not at issue. As to Carl's IRA, he did not use credit to buy it; rather, he took money out of his mutual fund to do so. In addition, the Debtors' conversion of even the entire $9,000 into IRAs does not constitute a "very great amount" of money when compared to the cases in which the Eighth Circuit has found no fraudulent intent.[10]

---

[7] *Id.* at 814-15.

[8] *Id.* at 816.

[9] *Id.* at 817-18.

[10] *See, e.g., Addison*, 540 F.3d at 814-18 (finding that paying down mortgage by $11,500 and buying a $4,000 IRA on the eve of bankruptcy was acceptable exemption planning); *Hanson v. First Nat'l Bank in Brookings*, 848 F.2d, 866 867-68 (8th Cir. 1988) (finding that converting

Further, there is no allegation that there was less than adequate consideration as to Carl's IRA because there was no transfer of ownership.

Rather, the only potential extrinsic evidence of fraud as to Carl is that the Debtors failed to list the IRAs on their schedules, or to disclose the recent conversion of the mutual funds into the IRAs, with the alleged intent to mislead or deceive creditors (and the Trustee) about their financial situation. However, based on the Debtors' testimony at the hearing on the Trustee's objection, I find that they did not intend to mislead or deceive anyone by failing to list the IRAs on their schedules. The Debtors are not highly educated or sophisticated, and they credibly testified that they believed that the IRAs were part of their "retirement" with LPL Financial Services, which they believed they disclosed on Line 9 involving life insurance with that company. Moreover, they voluntarily and readily produced the documentation evidencing the purchase of the IRAs at their § 341 meeting of creditors.

At the hearing, the Trustee established that, at the time the Debtors invested the money in the IRAs, they were in serious financial trouble and were admittedly contemplating filing for bankruptcy protection. However, the Eighth Circuit has

---

approximately $20,000 into life insurance policies and prepaying an additional $11,033 on a homestead mortgage was acceptable exemption planning); *In re Johnson*, 880 F.2d 78, 79 (8th Cir. 1989) (finding that paying off $175,000 in debts against a home was acceptable exemption planning). *See also In re Wilmoth*, No. 08-6022 (B.A.P. 8th Cir. Dec. 9, 2008) (finding that paying down mortgage by $140,000 was acceptable exemption planning under *Addison*).

essentially held that insolvency is not a factor to be considered. Further, although there was no evidence that the Debtors understood the distinction between the non-exempt mutual funds and the exempt IRAs at the time they converted the funds, even if they had converted the money with the express intent of claiming the exemptions in their bankruptcy case, the Eighth Circuit has made clear that this, without more, is permissible.[11]

The Trustee correctly points out that § 513.430.1(10)(f) prohibits bankruptcy debtors from claiming an exemption in an IRA which is "fraudulent" as defined in § 456.630, which previously contained a lower standard for showing fraud than that enunciated in *Addison*. That section provided, in relevant part:

> "Fraud" includes the transfer of funds . . . (a) [w]ith the intent to hinder, delay, or prevent the creditor from collecting a lawful debt; (b) [w]hen such party was, or shortly before he became, insolvent; (c) [w]hen such party was not paying his debts as they became due; and (d) [w]hile any creditor lawsuit was pending against such party.[12]

I have previously held that, although § 456.630 was repealed in 2004, since there was no corresponding change to § 513.430.1(10)(f) to re-define fraud, the language from

---

[11] *Addison*, 540 F.3d at 814 ("[I]t is well established that . . . a debtor's conversion of non-exempt property to exempt property on the eve of bankruptcy for the express purpose of placing that property beyond the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled.") (*quoting Hanson*, 848 F.2d at 868).

[12] Mo. Rev. Stat. § 456.630 (1992) (relating to trusts and estates of decedents) (*repealed by* 2004 H.B. 1511, 92nd Gen. Assem., 2d Reg. Sess. (Mo. 2004)).

that section was helpful in determining whether a debtor could claim an exemption under that provision.[13] Based on that interpretation of the statutes, I held that contributions to retirement accounts made in contemplation of bankruptcy are not exempt.

However, my decision in *Orgeron* was made before the Eighth Circuit clarified in *Addison* that, in this Circuit, contributions to retirement accounts (or other exempt assets) made in contemplation of bankruptcy may be claimed exempt, unless there is some other extrinsic evidence of fraud. In light of *Addison*, and because the Missouri legislature has not re-defined fraud under § 513.430.1(10)(f), I find the analysis enunciated by the Eighth Circuit in *Addison* to be binding and applicable here.

As a result, because Annette does not seek the return of the equity transfer as to her IRA, her claimed exemption will be denied. However, because there was no extrinsic evidence of fraud as to Carl's conversion of his non-exempt mutual funds into the exempt IRA , he will be permitted to claim the exemption in his Roth IRA.

ACCORDINGLY, the Trustee's Objection to Debtors' Amended Claim of Exemptions is SUSTAINED as to Annette Montanaro's claimed exemption in her $3,500 Roth IRA and is OVERRULED as to Carl Montanaro's exemption in his $5,500 Roth IRA.

---

[13] *See In re Orgeron*, 2006 B.R. 335438 (Bankr. W.D. Mo. Feb. 2, 2006) (unpublished).

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 12-10-2008

Attorney for the trustee to serve parties not receiving electronic notice